## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN – MILWAUKEE DIVISION

| | |
|---|---|
| NOER FARES, an individual; JANEI RICE, an individual; LAYNA NYGREN, an individual, individually and on behalf of all others similarly situated, | **Case No.: 2:21-cv-00753-NJ** |
| | |
| Plaintiffs, | **COLLECTIVE ACTION** |
| | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| H, B & H, LLC dba ON THE BORDER GENTLEMEN'S CLUB, a Wisconsin Limited Liability Corporation; GERALD HAY, an individual, and DOES 1 through 10, inclusive, | |
| | Complaint Filed: June 17, 2021 |
| Defendants. | |

/

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... 1

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF FACTS ..............................................................................1

III.    SUMMARY JUDGMENT STANDARD ...........................................................6

IV.    DEFENDANTS' ANALYSIS OF THE ECONOMIC REALITIES TEST IS FATALLY FLAWED BECAUSE DEFENDANTS APPLIED THE INCORRECT ....................7

V.     DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON MISCLASSIFICATION BECAUSE DEFENDANTS BRIEF HIGHLIGHTS ON THE BORDER'S DANCER RULES, FEES, THE DEGREE OF CONTROL ON THE BORDER EXERCISES OVER PLAINTIFFS. .......................................................8

       A.     ON THE BORDER EXERCISED SIGNIFICANT CONTROL OVER DANCERS, INCLUDING PLAINTIFFS ...........................................11

       B.     DEFENDANTS WERE IN CONTROL OF PLAINTIFFS' OPPORTUNITY FOR PROFIT OR LOSS DEPENDING ON THEIR SKILL .........................15

       C.     DEFENDANTS' INVESTMENTS IN ON THE BORDER GREATLY EXCEED PLAINTIFFS' INVESTMENTS .......................................................16

       D.     NO SPECIAL SKILL IS REQUIRED TO PROVIDE ADULT ENTERTAINMENT DANCES .......................................................17

       E.     DEFENDANTS HIRED PLAINTIFFS TO WORK AT ON THE BORDER INDEFINITELY ...........................................................................18

       F.     PLAINTIFFS PROVIDED AN INTEGRAL PART OF DEFENDANTS' BUSINESS ........................................................................................19

VI.    DEFENDANTS HAVE FAILED THEIR INITIAL BURDEN FOR EACH FACTOR OF THE ECONOMIC REALITIES TEST ..................................................................20

VII.   PLAINTIFFS ARE COVERED UNDER THE FLSA'S INDIVIDUAL AND ENTERPRISE COVERAGE PROVISIONS BECAUSE DEFENDANTS ADMIT THAT PLAINTIFFS SERVE OUT-OF-STATE CUSTOMERS AND DEFENDANTS ARE ENGAGED IN COMMERCE ..............................................................20

VIII.   DEFENDANTS FAIL TO MEET THEIR INITIAL BURDEN ON PLAINTIFFS' ILLEGAL KICKBACK AND FORCED TIPPING CAUSES OF ACTION BEFORE PLAINTIFFS' MUST CREATE A GENUINE ISSUE OF MATERIAL FACT ..............23

IX.    CONCLUSION ...........................................................................................27

**Cases**

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242, 248 (1986) ................................................................. 6

*Anderson v. Mt. Clemens Pottery Co.*,

    328 U.S. 680, 688-89 (1946) ............................................................ 23

*Berry v. Great American Dream, Inc.*,

    No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) .................... 10

*Brant v. Schneider Nat'l, Inc.*,

    43 F.4th 656 (7th Cir. 2022) ......................................................... 7, 9

*Brock v. Mr. W Fireworks, Inc.*,

    814 F.2d 1042, 1044 (5th Cir. 1987) ................................................... 9

*Butler v. PP & G, Inc.*,

    2013 WL 5964476, at *9 (D. Md. Nov. 7, 2013) ........................................ 10

*Celotex Corp. v. Catrett*,

    477 U.S. 317, 323 (1986) .......................................................... passim

*Clincy v. Galardi South Enter., Inc.*,

    808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) .............................................. 9

*Collins v. Barney's Barn, Inc., et al.*,

    2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) .......................................... 10

*Espizona v. Galardi South Enterprises.*,

    2018 WL 1729757) (S.D. Fl. April 10, 2018) .......................................... 11

*Est. of Suskovich v. Anthem Health Plans of Virginia, Inc.*,

    553 F.3d 559, 565-66 (7th Cir. 2009) ................................................ 7, 9

*Foster v. Gold & Silver Priv. Club, Inc.*,

    2015 WL 8489998, at *5 (W.D. Va. Dec. 9, 2015) ...................................... 10

*Frakes v. Peoria Sch. Dist. No. 150*,

    872 F.3d 545, 550 (7th Cir. 2017) .................................................... 6

Case 2:21-cv-00755-NJ   Filed 01/27/23   Page 3 of 34   Document 55

*Gardner v. Country Club, Inc.*,

    2015 WL 7783556, at \*12 (D.S.C. June 3, 2016) ........................................................ 11

*Gilbo v. Agment, LLC*,

    2020 WL 759548, Case No. 19cv0767 (N.D. Ohio Feb. 14, 2020) ............................... 9

*Gordon v. FedEx Freight, Inc.*,

    674 F.3d 769, 772-73 (7th Cir. 2012) ................................................................. passim

*Grant v. Trs. Of Ind. Univ.*,

    870 F.3d 562, 568 (7th Cir. 2017) ................................................................................ 6

*Harrell v. Diamond A Entm't, Inc.*,

    992 F.Supp. 1343, 1348 (M.D. Fla. 1997) ...................................................................... 9

*Hart v. Rick's Cabaret Int'l, Inc.*,

    967 F.Supp.2d 901, 912-913 (S.D.N.Y. 2013) ............................................................. 10

*Hobbs v. Petroplex Pipe & Constr., Inc.*,

    946 F.3d 824 (5th Cir. 2020) ....................................................................................... 15

*Hobbs v. Petroplex Pipe & Constr., Inc.*,

    946 F.3d 824 (5th Cir. 2020) ....................................................................................... 18

*Hurst v. Youngelson*,

    354 F.Supp.3d 1362 (N.D. GA 2019) ............................................................................ 9

*Johnson v. Houston KP, LLC*,

    588 F.Supp.3d 738 (S.D. Tex. 2022) ........................................................................... 15

*Kimbrel v. DEA Corp.*,

    2016 WL 7799340 (E.D. Tenn. August 2, 2016) .......................................................... 11

*Lester v. Agment, LLC*,

    2016 WL 1588654, case no. 15cv886 (N.D. Ohio, April 20, 2016) ............................... 9

*Levi v. Gulliver's Tavern, Incorporated*,

    No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ............................... 10

*Martin v. Priba Corp.*,

    No. 3:91-CV-2786-G, 1992 WL 486911, at \*5 (N.D. Tex. 1992) ................................ 11

*Martinez v. Manolos Tamales, Inc.*,

    2015 WL 5144024, at *1 (N.D. Ill. Aug. 31, 2015)......................................................20

*Mason v. Fantasy, LLC*,

    No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015).....10

*McFeeley v. Jackson St. Ent., LLC*,

    47 F. Supp. 3d 260, 279 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016) ..............10

*Mednick v. Albert Enterprises, Inc.*,

    508 F.2d 297, 300 (5th Cir. 1975) ...............................................................................8

*Morse v. Mer Corp.*,

    2010 WL 2346334, at *6 (S.D. Ind. 2010) ..................................................................10

*Morse v. Mer Corp.*,

    No. 1:08-cv-1389, 2010 WL 2346334 at *4 (S.D. Ind. June 4, 2010)..........................16

*Nichols v. Michigan City Plant Planning Dep't*,

    755 F.3d 594, 599 (7th Cir. 2014) ................................................................................6

*Parrish v. Premier Directorial Drilling, L.P.*,

    917 F.3d 369, 381 (5th Cir. 2019) ..............................................................................11

*Pizzarelli v. Cadillac Lounge, LLC*,

    2018 WL 2971114 (D. R.I. Apr. 13, 2018)..................................................................10

*Reich v. Circle C. Investments, Inc.*,

    998 F.2d 324, 330 (5th Cir. 1993) ........................................................................11, 16

*Roe-Midgett v. CC Servs., Inc.*,

    512 F.3d 865, 869 (7th Cir. 2008) ................................................................................8

*Schofield v. Gold Club Tampa, Inc.*,

    2021 WL 533540 (M.D. Fl. Feb. 2, 2021)....................................................................9

*Sec. of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987).....passim

*Shaw v. Set Enterprises, Inc.*,

    241 F.Supp.3d 1318, 1326 (S.D. Fla. 2017) ...............................................................17

*Spierer v. Rossman*,

       798 F.3d 502, 507 (7th Cir. 2015) ................................................................. 6

*Stevenson v. Great American Dream, Inc.*,

       No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013)..................... 10

*Thompson v. Linda and A. Inc.*,

       779 F.Supp.2d 139, 151 (D.D.C. 2011) ........................................................ 10

*Thornton v. Crazy Horse*, *Inc.*,

       2012 WL 2175753 (D. Alaska June 14, 2012) ................................................. 10

*Vanskike v. Peters*,

       974 F.2d 806 (7th Cir. 1992) ...................................................................... 8

*Vaughn v. Paradise Entm't Group, Inc.*,

       No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016) ............................... 10

*Verma v. 3001 Castor, Inc.*,

       937 F.3d 221 (3d. Cir. 2019)...................................................................... 10

*Verma v. 3001 Castor*, *Inc.*,

       No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014)............................ 10

**Statutes**

29 U.S.C. § 203................................................................................................ 1

29 U.S.C. § 203(e)(1).......................................................................................10

29 U.S.C. § 206................................................................................................ 1

29 U.S.C. § 207................................................................................................ 1

**Rules**

FED. R. CIV. P. 56(a) ......................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

 Plaintiffs[1] Noer Fares ("Fares"), Janei Rice ("Rice"), and Lanya Nygren ("Nygren") (collectively, "Plaintiffs") worked as exotic dancers at "On The Border" in Franklin, Wisconsin between 2007 and 2021. *See* Dkt. 52 ¶ 1. "On The Border" is an exotic dance club that is owned and operated by defendant H, B & H, LLC dba On The Border Gentlemen's Club ("On The Border" or "the club"). *See* Dkt. 52 ¶ 2. Defendant Gerald Hay owns On The Border along with his brother, Daniel Hay. *See* Dkt. 52 ¶ 3.

Plaintiffs brought this action seeking to recover wages owed to them after being misclassified as independent contractors at On The Border under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq. See* Dkt. 1; Dkt. 52 ¶ 4.

On December 28, 2022, the parties filed concurrent dispositive motions. *See* Dkts. 46, 50. Defendants moved for summary judgment. Dkt. 46. Plaintiffs moved for partial summary judgment on the issues of Defendants' misclassification of Plaintiffs as independent contractors and Defendants' good faith defense. Dkt. 50.

Plaintiffs submit this memorandum in opposition to Defendants' December 28, 2022 motion for summary judgment. Defendants' motion for summary judgment on its face reveals that Defendants misclassified Plaintiffs as employees. Further, Defendants motion for summary judgment also underscores that the FLSA covers Plaintiffs, pursuant to both the FLSA's individual and enterprise coverage provisions.

## II.    STATEMENT OF FACTS

On The Border is an adult gentlemen's club in Franklin, Wisconsin where topless dancers are the primary form of entertainment. *See* Exhibit 1, Declaration of Noer Fares in Support of Plaintiffs' Motion for Partial Summary Judgment (Fares Decl.) at ¶ 1; *See* Dkt. 52 ¶¶1, 2. Dancers are the main attraction at On The Border, enticing customers with good looks, dances,

---

[1] Elizabeth Kornoelje was a Plaintiff in this matter until this Court granted Plaintiffs' Counsel's motion to withdraw from her representation. *See* Dkt. 45. In their moving papers, Defendants raise arguments regarding Ms. Kornoelje's claims in this matter. Because Plaintiffs' counsel no longer represents Ms. Kornoelje, Plaintiffs do not address Defendants' arguments as to Ms. Kornoelje.

and private dances. *See* Ex. 8 at 16:12-17 (Deposition of Tammy Lueck) (Tammy Lueck Dep.); Dkt. 52 ¶ 22. In fact, the home page of On The Border's website, https://otb.club, reads: "Welcome to On The Border, Milwaukee's only Midwest Gentlemen's Club of the Year. We Pride ourselves on being highly selective when it comes to choosing girls – we feature over 60 of Milwaukee's finest, plus monthly feature entertainers!" Dkt. 52 ¶ 23. Dancers are therefore an integral part of On The Border's business.

On The Border employed Plaintiffs at various times between at least 2007 until 2021. *See* Dkt. 1;  Dkt. 52 ¶ 1; *See* Exhibit 2, Declaration of Janei Rice in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Rice Decl.") ¶ 3. Plaintiff Noer Fares worked at On The Border as a dancer from approximately June 2018 until May 2021. *See* Fares Decl. at ¶ 3; Dkt. 52 ¶ 7. Plaintiff Janei Rice worked at On The Border as a dancer from approximately 2007 until 2019. Rice Decl. ¶ 3; Dkt. 52 ¶ 8. At time during Ms. Rice's employment with On The Border, Defendants classified Ms. Rice as an employee. *Id.* at ¶ 4; Dkt. 52 ¶ 9. Plaintiff Layna Nygren worked at On The Border as a dancer from approximately January 2021 until July 2021. *See* Exhibit 3, Declaration of Layna Nygren in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Nygren Decl.") ¶ 3; Dkt. 52 ¶ 10.

Defendant Gerald Hay owns On The Border, the trade name of "H, B & H, LLC" along with his brother, Daniel Hay. *See* Ex. 10 at 23:15 (Deposition of Robert Leone) (Robert Leone Dep.); Dkt. 52 ¶ 11. Gerald Hay does not own the property he uses to conduct On The Border business; instead, he rents the space for $19,200 per month to HAAH, LLC. *See* Ex. 14 at 30:1-9 (Deposition of Jason Alt) (Jason Alt Dep.); Dkt. 52 ¶ 12.  On The Border's General Manager is named Brian Hopkins ("Mr. Hopkins"). *See* Ex. 4 (Deposition of Brian Hopkins) (Brian Hopkins Dep.) at 10:21; Dkt. 52 ¶ 13. Mr. Hopkins has occupied this position since 2003. *Id.* at 10:24; Dkt. 52 ¶ 13. Mr. Hopkins reports to Gerald Hay and Daniel Hay. *Id.* at 11:4-5 Dkt. 52 ¶ 14.

Carlos Marchan ("Mr. Marchan") is the assistant manager at On The Border. *See* Ex. 5 at 9:20-23 ("Deposition of Carlos Marchan") ("Carlos Marchan Dep."); Dkt. 52 ¶ 18. Mr. Marchan oversees On The Border's security as well as the club's VIP Hosts. *Id.* at 10:4-6; *Id.* at 12:7-11;

Dkt. 52 ¶ 19. On The Border's "House Mom," Tammy Lueck, is responsible for hiring On The Border's dancers. *See* Ex. 4 at 21:19-20; Dkt. 52 ¶ 20.

Dancers at On The Border are hired based on their attractiveness, not their skill. *See* Ex. 8 at 15:24 to 16:6 (Tammy Lueck Dep.); Dkt. 52 ¶ 24. A manager "sees [an] application, sees a photo ID, and then sees a picture, and then determines whether or not [a Dancer] will come in for an audition." Ex. 8 at 16:7-10 (Tammy Lueck Dep.) Dkt. 52 ¶ 25. Further, as discussed above, On The Border's website boasts that is "[p]ride[s] [itself] on being highly selective when it comes to choosing girls – we feature over 60 of Milwaukee's finest, plus monthly feature entertainers!" *See* Ex. 17 – (On The Border's Website); Dkt. 52 ¶ 26.

On The Border has a written set of rules titled "Club Rules." *See* Ex. 6 ("Club Rules"); Ex. 4 at 23:18 (Brian Hopkins Dep.); Dkt. 52 ¶ 27. These rules apply to all dancers. Ex. 4 at 25:24 (Brian Hopkins Dep.); Dkt. 52 ¶ 28. On The Border's Club rules require: (1) waiting until the next girl comes to stage before leaving the stage; (2) paying a fine if a dancer skips or is late to a stage set; (3) no see-through outfits; no eating on the floor; (4) "we are not here to babysit;" (5) no excessive drinking; (6) no bringing in alcohol or else a fine will result; (7) no soliciting or leaving with customers; (8) no "sleazy" or "lewd" dancing (no legs over the shoulders, crotches in face, etcetera; (9) no cell phones on the floor; no "whining" or "complaining;" be on time; (10) know your mandatory shifts; (11) turn in pimps and drug-dealers to management; (12) no "raggy" costumes; (13) ensure hair and make-up is done; (14) watch your weight and shape; (15) no arguing with other dancers; (16) treat non-tippers with respect; (17) maintain a smile; (18) club is topless only; (19) no kissing customers on the lips; (20) no sitting on customer's laps on the floor; (21) no belligerent, loud, obnoxious, or unprofessional behavior; (22) no stage props; no "rides for five;" (23) dancers must finish tip walks quickly; (24) rides must wait outside; (25) no boyfriends, girlfriends, or husbands allowed in the club during work; (26) dance only in designated areas; (27) if working a day shift, must leave at 7:00p.m.; (28) no hanging out in dressing room; (29) must wait for security to clear you to leave; no overcharging customers; (30) must wear shoes at all times; only a customer, VIP host, or waitress can invite you to a VIP

room; (31) top must be on during tip walk; (32) no drugs; (33) shift hours from 11:30 a.m. to 7:00p.m. for day shift and 6p.m. to 2a.m. for night shifts; (34) must work entire shift unless you receive prior approval; (35) if there are any issues with these rules, dancers may only raise them with house supervisors, not management or owners. *See* Ex. 6 – (Club Rules); Dkt. 52 ¶ 30.

Further, dancers maintain no authority or discretion to expel a customer from On The Border. *See* Ex 4 at 21:15 (Brian Hopkins Dep.); Dkt. 52 ¶ 31. On The Border also requires dancers to work at least two shifts per week. *See* Ex. 4 at 28:2-10 (Brian Hopkins Dep.); Dkt. 52 ¶ 32. On The Border also forces dancers to pay a "house fee" to "incentivize" dancers to show up for work on time "rather than show up late." *See* Ex. 4 at 27:15-25 (Brian Hopkins Dep.); Ex. 12 – (House Fees); Dkt. 52 ¶ 33.

On The Border's control of its dancers goes beyond formal rules and house fees. Sometimes, management will institute a policy as a form of control. *See* Ex. 9 – (Posted Rules); Dkt. 52 ¶ 38. Some of these policies require each dancer to work at least one Saturday per month. *Id*.; Dkt. 52 ¶ 39. If a dancer schedules a shift to comply with this rule and does not appear for her shift, that dancer is forbidden from working at On The Border for a week. *Id*.; Dkt. 52 ¶ 39. Another managerial policy precludes dancers from leaving their shift early. *Id*.; Dkt. 52 ¶ 40. Further, management does not allow dancers to leave On The Border until all customers have left the building at the end of the end. *Id*.; Dkt. 52 ¶ 41.

On The Border management also judged dancers regarding their looks during the hiring process and throughout their employment. *See* Ex. 8 at 16:12-17 (Tammy Lueck Dep.); Ex. 6 – (Club Rules); Dkt. 52 ¶ 42. Specifically, the Club Rules require that dancers "watch" their "weight" and "shape." *See* Ex. 6; Dkt. 52 ¶ 43.

The house mom, Tammy Lueck, and Lee Schroeder (a house "parent") coordinate the weekly schedules for Plaintiffs and other dancers. *See* Ex. 7 at 12:11-16 (Deposition of Lee Schroeder) (Lee Schroeder Dep.); Dkt. 52 ¶ 44. It was required that each dancer work at least two shifts per week at On The Border. *See* Ex. 4 at 28:2-10 (Brian Hopkins Dep.); Dkt. 52 ¶ 45.

On The Border also operates with a "stage rotation." *See* Ex. 10 at 33:8 (Deposition of

Robert Leone) (Robert Leone Dep.); Dkt. 52 ¶ 45. The DJ conducts On The Border's stage rotation by calling up a dancer to perform on stage rather than a dancer being free to perform for a duration of her choosing. *See* Ex. 10 at 33:10-15 (Robert Leone Dep.); Dkt. 52 ¶ 47. Failure to follow On The Border's rules leaves a dancer susceptible to fines, suspension, or some combination thereof. *See* Ex. 9 – (Posted Rules); Dkt. 52 ¶ 48.

Lastly, On The Border set the prices that Plaintiffs were forced to charge customers. *See* Ex. 1, ¶ 4 (Fares Decl.); Ex. 2, ¶ 6 (Rice Decl.); Ex. 3, ¶ 4 (Nygren Decl.); Dkt. 52 ¶ 49.

On The Border dancers maintain no managerial responsibilities and therefore could not profit from their management of others. *See* Ex. 1, ¶ 9 (Fares Decl.); Ex. 2, ¶ 11 (Rice Decl.); Ex. 3, ¶ 9 (Nygren Decl.); Dkt. 52 ¶ 50. Rather, On The Border encourages dancers to "make [their] best effort to follow [the Club's] rules [and] you will have a long, lucrative career with us here at On The Border!" *See* Ex. 6 — (Club Rules); Dkt. 52 ¶ 51. That is to say, On The Border management ties dancers' ability to earn money to following its rules. Dkt. 52 ¶ 52

On The Border management rents its space for $19,200 per month to HAAH, LLC. *See* Ex. 14 at 30:1-9 (Jason Alt Dep.); Dkt. 52 ¶ 53. Further, On The Border supplies both of the club's stages. *See* Ex. 4 at 17:7-13 (Brian Hopkins Dep.); Dkt. 52 ¶ 54. On The Border also supplies all poles that dancers use in performing their duties as entertainers for On The Border. *See id.*; Dkt. 52 ¶ 55. On The Border furnishes the PA system used to emanate music through the club and facilitate Plaintiffs' performances. *See* Ex. 4 at 17:20-25 (Brian Hopkins Dep.); Dkt. 52 ¶ 56.

On The Border advertises its business via local radio and newspapers. *See* Ex. 4 at 18:13-15; Dkt. 52 ¶ 57. On The Border pays for these advertisements. *See* Ex. 4 at 18:13 to 19:3 (Brian Hopkins Dep.); Dkt. 52 ¶ 58. On The Border also controls the way the DJ operates the sound system. *See* Ex. 10 at 32:10 (Robert Leone Dep.); Dkt. 52 ¶ 59.

Importantly, the Club controls which customers may enter On The Border. *See* Ex. 10 at 22:5-9 (Robert Leone Dep.); Dkt. 52 ¶ 60. If a dancer has a dispute with a customer, On The Border security and/or managers, not Plaintiffs, determine whether customers leave On The

Border. *See* Ex. 4 at 20:15-17 (Brian Hopkins Dep.); Dkt. 52 ¶ 61.

On The Border management determined that dancer shifts would run from 11:30 a.m. to 7:00 p.m. for a day shift and that all night shifts would begin at 6:00 p.m. *See* Ex. 6 – (Club Rules); Dkt. 52 ¶ 62. There are no customers for whom Plaintiffs may perform at all other times; indeed, Plaintiffs may not enter the premises during non-business hours. Dkt. 52 ¶ 63. Plaintiffs were not involved in setting On The Border's hours and when they could work. *See* Ex. 1; Ex. 2; Ex. 3; Dkt. 52 ¶ 64. Plaintiffs could work for On The Border only when management decided to open the club. Dkt. 52 ¶ 64.

## III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party has properly supported [its] motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his] favor." *Gordon v. FedEx Freight, Inc*., 674 F.3d 769, 772-73 (7th Cir. 2012).

Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. Of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Nichols v.*

*Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)). Likewise, irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV. DEFENDANTS' ANALYSIS OF THE ECONOMIC REALITIES TEST IS FATALLY FLAWED BECAUSE DEFENDANTS APPLIED THE INCORRECT TEST

In their motion for summary judgment, Defendants apply an incorrect version of the economic realities test. Defendants list and apply the elements of the economic realities test as: (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.

Seventh Circuit Courts consider six factors when determining the economic reality of the working relationship: (1) the degree and nature of control that the employer has over the manner in which the alleged employee performs the work; (2) the chance that the alleged employee has for profit or loss depending on his or her skill; (3) the alleged employee's own investment in the equipment or materials needed to complete the work; (4) whether the service at issue requires special skill; (5) whether the employment relationship is permanent; and (6) the extent to which the alleged employee's service is an "integral part" of the employer's business. *Sec. of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987); *Est. of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 565-66 (7th Cir. 2009); *Mays v. Rubiano, Inc.*, 560 F. Supp.3d 1230 (N.D. Ind. 2021); *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656 (7th Cir. 2022).

**V. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON MISCLASSIFICATION BECAUSE DEFENDANTS BRIEF HIGHLIGHTS ON THE BORDER'S DANCER RULES, FEES, THE DEGREE OF CONTROL ON THE BORDER EXERCISES OVER PLAINTIFFS**

Defendants assert that no employer-employee relationship existed between Plaintiffs and On The Border. Defendants argue that On The Border relinquishes control as to how Plaintiffs will be paid by offering dancers a "choice" to be an Independent Contractor or an employee. Defendants further contend that Plaintiffs engage club customers when they choose while maintaining "artistic freedom" over the dances they perform. Defendants further assert that Plaintiffs are responsible for their own costumers and beauty products. Lastly, Defendants aver that Plaintiffs were "free to come and go as they please" and "work as many or as few shifts as they desires after working just a couple of mandatory requested shifts." Defendants plainly do not properly support their motion by presenting a lack of genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.

The requirements of the FLSA apply only to employees, not independent contractors. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "to employ" as "to suffer or permit to work." 29 U.S.C § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The purpose of the FLSA is to "protect those whose livelihood is dependent upon finding employment within the business of others." *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 300 (5th Cir. 1975).

Whether the Plaintiffs are "employees" under the FLSA is a question of law for the Court. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). The "economic reality of the working relationship" guides this Court's misclassification inquiry under the FLSA. *Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992) (quoting 29 U.S.C. § 203(e)(1)).

Seventh Circuit Courts consider six factors when determining the economic reality of the working relationship: (1) the degree and nature of control that the employer has over the manner in which the alleged employee performs the work; (2) the chance that the alleged employee has

for profit or loss depending on his or her skill; (3) the alleged employee's own investment in the equipment or materials needed to complete the work; (4) whether the service at issue requires special skill; (5) whether the employment relationship is permanent; and (6) the extent to which the alleged employee's service is an "integral part" of the employer's business. *Sec. of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987); *Est. of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 565-66 (7th Cir. 2009).

In determining the economic reality of the working relationship, this Court need not look to an isolated factor, but must weigh all the circumstances of the work activity. *Lauritzen*, 835 F.2d 1529 (internal citations and quotation marks omitted). No criterion is, by itself or absence, dispositive or controlling. *Id*.

Moreover, the parties' subjective beliefs and expectations, as well as the labels they place on their relationship, are immaterial. *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022) ("It is well established . . . that the terms of a contract do not control the employer-employee relationship issue under the [Fair Labor Standards] Act."); *Vanskike*, 974 F.2d at 808 (status as an employee under the FLSA depends on the "economic reality" of the employment relationship, rather than any "technical label."); *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1044 (5th Cir. 1987) ("[F]acile labels and subjective factors are only relevant to the extent that they mirror 'economic reality.'").

Exotic dance clubs' independent contractor arguments have been summarily rejected by district courts and circuit courts across the United States. The overwhelming majority of courts to consider this issue have determined that exotic dancers are employees under the FLSA. *See Schofield v. Gold Club Tampa, Inc.*, 2021 WL 533540 (M.D. Fla. Feb. 2, 2021) (granting partial summary judgment on issue of classification); *Gilbo v. Agment, LLC*, 2020 WL 759548, Case No. 19cv0767 (N.D. Ohio Feb. 14, 2020) (summary judgment for plaintiffs) (upheld by Sixth Circuit in *Gilbo v. Agment, LLC*, 831 Fed.Appx. 772 (6th Cir. 2020); *Lester v. Agment, LLC*, 2016 WL 1588654, case no. 15cv886 (N.D. Ohio, April 20, 2016) (granting summary judgment for plaintiffs under FLSA and Ohio law); *Hurst v. Youngelson*, 354 F.Supp.3d 1362 (N.D. Ga.

2019) (summary judgement for dancers, individual owners are employers, fees from customers were tips, not service charge); *Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997) (There is no debate, as a matter of law, that exotic dancers such as the putative class members in this matter are "employees" under the FLSA); *Clincy v. Galardi South Enter., Inc.*, 808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) (summary judgment); *Stevenson v. Great American Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) (same); *Berry v. Great American Dream, Inc.*, No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) (club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees); *Vaughn v. Paradise Entm't Group, Inc.*, No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016) (summary judgment for plaintiff); *Dean v. 1715 Northside Drive, Inc.*, No. 1:14-CV-03775-CAP, Dkt. 102 (N.D. Ga. Jan. 14, 2017) (same); *McFeeley v. Jackson St. Ent.*, *LLC*, 47 F. Supp. 3d 260, 279 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016) ("Considering all six factors together, particularly the defendants' high degree of control over the dancers, the totality of circumstances speak clearly to an employer-employee relationship."); *Pizzarelli v. Cadillac Lounge, LLC*, 2018 WL 2971114 (D. R.I. Apr. 13, 2018) (granting summary judgment for plaintiffs under FLSA and Rhode Island law); *Mason v. Fantasy, LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014) (*aff'd by the Third Circuit in Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3d. Cir. 2019): *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 912-913 (S.D.N.Y. 2013) (granting summary judgment for plaintiffs under FLSA and New York law); *Collins v. Barney's Barn, Inc., et al.*, 2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) (granting summary judgment for plaintiffs under FLSA); *Butler v. PP & G, Inc.*, 2013 WL 5964476, at *9 (D. Md. Nov. 7, 2013) *reconsideration denied*, 2014 WL 199001 (D. Md. Jan. 16, 2014) (same); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Thompson v. Linda and A.*

*Inc.*, 779 F.Supp.2d 139, 151 (D.D.C. 2011) (granting summary judgment for plaintiffs under FLSA and District of Columbia law); *Morse v. Mer Corp.*, 2010 WL 2346334, at *6 (S.D. Ind. 2010); *Foster v. Gold & Silver Priv. Club, Inc.*, 2015 WL 8489998, at *5 (W.D. Va. Dec. 9, 2015) (noting that courts have consistently found exotic dancers to be employees under the FLSA despite the commonly transient nature of the industry); *Martin v. Priba Corp.*, No. 3:91-CV-2786-G, 1992 WL 486911, at *5 (N.D. Tex. 1992) (denies employer's summary judgment and grants, *sua sponte*, partial summary judgment for plaintiff); *Reich v. Circle C. Investments*, *Inc.*, 998 F.2d 324, 330 (5th Cir. 1993); *Espizona v. Galardi South Enterprises.*, 2018 WL 1729757) (S.D. Fla. April 10, 2018) (Dancers are Employees on Cross Motions for Summary Judgment); *Gardner v. Country Club, Inc.*, 2015 WL 7783556, at *12 (D.S.C. June 3, 2016) (granting partial summary judgment for plaintiffs under FLSA); *Kimbrel v. DEA Corp.*, 2016 WL 7799340 (E.D. Tenn. August 2, 2016) (granting partial summary judgment for plaintiffs under FLSA).

A. ON THE BORDER DOES NOT ESTABLISH AN ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT REGARDING ITS SIGNIFICANT CONTROL OVER PLAINTIFFS

Defendants contend that On The Border did not exercise significant control over the manner of Plaintiffs' work. *See Est. of Suskovich*, 553 F.3d at 565-66. Defendants claim that Plaintiffs were free to choose how On The Border paid them for their work, i.e., as an independent contractor or an employee. Defendants further aver that Plaintiff engaged customers at the clubs when they chose, may solicit customers of their choosing, and may work whenever Plaintiffs prefer, so long as Plaintiffs work the mandatory "two to three" shifts per week. Defendants also assert that Plaintiffs may leave the Club early, but if they remain on premises at closing time, then they must remain inside until all customers have left On The Border. Defendants' argument misses the mark by a wide margin.

The Seventh Circuit recently described the control inquiry in an FLSA case as "ha[ving] roots deeper than the other *Lauritzen* factors and originat[ing] in the common-law test to find a master-servant relationship giving rise to *respondeat superior* liability." *Brant*, 43 F.4th at 666. Indeed, the *Brant* Court asserted that "one way to understand this factor is to ask whether the

worker has control of such a meaningful portion of his labor that he operates as a separate economic entity. . . ." *Id.* (citing *Parrish v. Premier Directorial Drilling, L.P.*, 917 F.3d 369, 381 (5th Cir. 2019)).

Defendants' argument that On The Border did not exercise significant control over Plaintiffs is premised on facts that are irrelevant to the degree of control over Plaintiffs' work. *See Est. of Suskovich*, 553 F.3d at 565-66. Defendants first assert that On The Border relinquishes control by allowing Plaintiffs to choose to be an employee or an independent contractor. This fact deals with Plaintiffs' mode of compensation for their work, not Plaintiffs' performing dances for On The Border customers.

Defendants further argue that Plaintiffs engage customers for dances when they choose. This is incorrect. Defendants required Plaintiffs to work hours set by the club, and to work at least two shifts per week. *See* Ex. 6; Ex. 4 at 28:2-10 (Brian Hopkins Dep.); Dkt. 52 ¶ 32. If Plaintiffs wished to engage dancers at On The Border during non-operational hours, Defendants' control over Plaintiffs' workspace precluded them from doing so. Moreover, Defendants required Plaintiffs to work "at least two" shifts per week, *id.*, or "two to three shifts per week" according to Defendants' brief. Defendants' Brief, p. 16. Furthermore, the small amount of discretion to engage, or not engage, a customer does not transmogrify Plaintiffs into their own "economic entities" within On The Border. *Brant*, 43 F.4th at 666. Defendants therefore required Plaintiffs to "engage customers" at least "two to three shifts per week" even if Plaintiffs were satisfied with their earnings.

Defendants next claim they do not exercise significant control over Plaintiffs' work because Plaintiffs remain free to perform at other gentlemen's clubs. Whether Plaintiffs are free to perform at other gentlemen's clubs is irrelevant to the degree of control Defendants exercise over Plaintiffs' work at On The Border. *See Est. of Suskovich*, 553 F.3d at 565-66. Indeed, a Wal-Mart sales associate is no less a Wal-Mart employee because he is free to maintain a part-time job as a sales associate at Target. This employee's work at both businesses would give rise to *respondeat superior* liability, the roots of *Lauritzen*'s control inquiry. *Brant*, 43 F.4th at 666.

Case 2:21-cv-00753-NJ     Filed 01/27/23     Page 18 of 34     Document 55

Plaintiffs' ability to work at other gentlemen's clubs is thus irrelevant to the control inquiry under the economic realities test.

Defendants next argue that On The Border did not choose each specific dance that Plaintiffs performed and that Plaintiffs may leave a shift early *if* that shift does not end at closing time. In essence, Defendants claim that they did not exercise significant control over Plaintiffs' work because Plaintiffs maintained minimal bodily autonomy: the ability to move one's body without specific direction from On The Border. Defendants' admitted in their brief that "this may seem like control." Defendants' Brief, p. 16. Plaintiffs agree, and so should this Court.

Defendants created and enforced the Club Rules, policies, and procedures. Indeed, as Defendants reveal in their summary judgment brief, "[t]here are club rules which are reviewed with the dancers . . . ." Further, the Club Rules themselves state that dancers must follow these Rules in exchange for a "long, lucrative" career with On The Border. *See* Ex. 6; Dkt. 52 ¶ 51. Defendants' Club Rules prohibit a dancer from leaving the stage until to next dancer has arrived. *Id;* Dkt. 52 ¶ 30. The Club Rules prohibit a dancer from engaging in "lewd" or "sleazy" dancing. *Id*; Dkt. 52 ¶ 30. Defendants also require dancers to "watch [their] weight and shape" and to "ensure hair and makeup is done." *Id*; Dkt. 52 ¶ 30. Defendants also prohibit Plaintiffs from utilizing stage props as part of their dance routine. *Id*; Dkt. 52 ¶ 30. On The Border also requires that dancers perform only in designated areas. *Id*; Dkt. 52 ¶ 30. On The Border's Club Rules control how and when Plaintiffs can — and cannot — fulfill their employment obligations at On The Border.

Defendants admit that "house fees are what dancers pay to work at On The Border." Defendants' Brief, pg. 23. Defendants also posted rules in the Club that Defendants required all dancers to follow. *See* Ex. 9; Dkt. 52 ¶ 30. These rules require each dancer to work at least one Saturday per month "if [she] wanted to there [there]." *Id*; Dkt. 52 ¶ 39. These rules also precluded a dancer from leaving her shift before her scheduled departure. *Id*. Moreover, these rules also forbid dancers from leaving On The Border until all customers have left the building at the end of the night. *Id*. Again, On The Border's Rules plainly govern when and how Plaintiffs

must fulfill their employment duties with On The Border.

Plaintiffs also possess no discretion to expel an unruly customer from On The Border. *See* Ex. 4 at 21:15 (Brian Hopkins Dep.); Dkt. 52 ¶ 61. Defendants also require Plaintiffs to pay a house fee each shift to "incentivize" Plaintiffs to arrive on time for work "rather than show up late." *See* Ex. 4 at 27:15-25 (Brian Hopkins Dep.); Dkt. 52 ¶ 33. The later Plaintiffs arrive to work, the higher they pay in house fees. *See* Ex. 12; Dkt. 52 ¶ 33. If a dancer arrives after 10:00 p.m., On The Border forbids her from working that evening. *Id*; Dkt. 52 ¶ 37. This form of control strips Plaintiff of any ability to decide for whom she will perform her employment duties while forcing her to subsidize On The Border's business costs in the form of "house fees."

Defendants controlled the conditions under which Plaintiffs worked. Defendants set the prices that Plaintiffs were forced to charge customers. *See* Ex. 1, ¶ 4 (Fares Decl.); Dkt. 52 ¶ 49. On The Border's House Parents, Tammy Lueck and Lee Schroeder, coordinated weekly schedules for Plaintiffs. *See* Ex. 7 at 12:11-16 (Lee Schroeder Dep.); Dkt. 52 ¶ 44. To this end, Defendants required to work hours set by the club, and to work at least two shifts per week. *See* Ex. 6; Ex. 4 at 28:2-10 (Brian Hopkins Dep.); Dkt. 52 ¶ 45. On The Border thus exercised control over the amount of money Plaintiffs may earn during their employment and when Plaintiffs were required to maintain employment at On The Border.

Plaintiffs danced at On The Border within the bounds of Defendants' rules, policies, and procedures. Defendants' rules encompassed when Plaintiffs worked, how Plaintiffs performed their services, for whom Plaintiffs performed their services, how much money Plaintiffs could collect from a customer in exchange for services, Plaintiffs' appearances, and where Plaintiffs could perform their services. Defendants' control thus encompassed all aspects of Plaintiffs' work. Because of the control that Defendants exercised over Plaintiffs' work at On The Border, Plaintiffs did not "have control of such a meaningful portion of [their] labor that [they] operates as a separate economic entity. . . ." *Brant*, 43 F.4th at 666. This factor therefore weighs in favor of finding that Plaintiffs were On The Border's employees under the FLSA.

Defendants fall well short of demonstrating that there is no genuine issue of material fact

regarding the degree of control On The Border exercised over Plaintiffs' work. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is fraught with genuine issues of material fact such that a reasonable jury could find On The Border exercised significant control over the manner of Plaintiffs' work. *See Gordon*, 674 F.3d at 772-73.

    B.    <u>Defendants Were in Control of Plaintiffs' Opportunity for Profit or Loss Depending on Their Skill</u>

Defendants argue that "as for the kind of occupation and nature of skill required, prior dancing experience is not required to work at On The Border. The girls are not taught how to dance once hired, rather they have control over their performances" Defendants' Brief, pg. 17. Courts throughout the nation, including in the Seventh Circuit, regularly reject clubs' arguments that "control over performances" equates to "skill." *See Rubiano*, 560 F.Supp.3d at 1236 ("The parties concede that exotic dancing doesn't require any specialized skills, supporting employment"); *Johnson v. Houston KP, LLC*, 588 F.Supp.3d 738 (S.D. Tex. 2022) (finding a lack of unique skill required in performing job of exotic dancer at adult-oriented club favored dancers being classified as employees rather than independent contractors); *see also Hobbs v. Petroplex Pipe & Constr., Inc*. 946 F.3d 824 (5th Cir. 2020) (finding that greater skill of the employee favors finding that the worker is an independent contractor rather an employee under the FLSA).

Moreover, Plaintiffs depended on Defendants' ability to attract customers, as well as Defendants' providing a building in which to work. On The Border encourages dancers to "make [their] best effort to follow [the Club's] rules [and] you will have a long, lucrative career with us here at On The Border!" *See* Ex. 6; Dkt. 52 ¶ 51. By its terms, On The Border's plea for dancers to follow their rules implies that no special skill is required to be a successful dancer for On The Border — only attractiveness.

Defendants' control over the base prices lessened Plaintiffs' ability to negotiate prices, as well as Plaintiffs' control over profits and loss. The record illustrates that Defendants controlled

all aspects of On The Border's operation. Defendants — not Plaintiffs' skill — thus maintained primary control of Plaintiffs' opportunity to profit from her employment with On The Border.

Defendants cannot establish that there is no genuine issue of material fact regarding Plaintiffs' opportunity for profit or loss depending on their skill. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is fraught with genuine issues of material fact such that a reasonable jury could find Plaintiffs' maintained little-to-no opportunity for profit or loss depending on their skill. *See Gordon*, 674 F.3d at 772-73.

C.     <u>Defendants' Investments in On The Border Greatly Exceed Plaintiffs' Investments</u>

Defendants argue that Plaintiffs are responsible for "the cost of what is takes to perform at the club in the first place, such as costumes, personal beauty products used in performing, and time invested into learning how to dance." Defendants admit that "On the Border owns the stage, poles and sound system utilized by the dancers." Nevertheless, Defendants aver "[a]t the very least, there is a shared responsibility and the club as to this third factor." Defendants' Brief, pg. 17. Again, Defendants' cannot establish that there is no genuine issue of material fact as to the parties' respective investments in On The Border. *Celotex Corp.*, 477 U.S. at 323.

Several courts that have addressed this factor of the economic realities test find, in short order, that it leans in favor an employer-employee relationship. *See Rubiano, Inc.*, 560 F. Supp.3d at 1236 ("The Company expended most of the fund necessary to operate Danzers, and any costs incurred by [Plaintiffs] were minor or incidental, such as the costs for costumes. . . ."); *Morse v. Mer Corp.*, No. 1:08-cv-1389, 2010 WL 2346334 at *4 (S.D. Ind. June 4, 2010) ("Plaintiffs 'do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food, beverage, and other inventory.' Thus,. . . this factor tips in favor of employee status."); *Reich*, 998 F.2d at 328 ("A Dancer's investment in costumes and a padlock is relatively minor to the considerable investment [the club] has in operating a nightclub" and the club's investment is "obvious."); *see also Reich*, 890

F.Supp. at 593 (entertainers make no investment aside from choosing what clothing to wear, and "but for defendants' provision of a lavish work environment, the entertainers at the club likely would earn nothing.").

Defendants rent the space used to operate On The Border for $19,200 per month. *See* Ex. 14 at 30:1-9 (Jason Alt Dep.); Dkt. 52 ¶ 53. Defendants purchased the two stages used to operate On The Border. *See* Ex. 4 at 17:7-13 (Brian Hopkins Dep.); Dkt. 52 ¶ 54. Defendants also purchased and installed the poles that dancers use to perform their duties at On The Border. *Id.*; Dkt. 52 ¶ 55. Defendants further purchased the PA system used to emanate music through the club and facilitate Plaintiffs' performances. *See* Ex. 4 at 17:20-25 (Brian Hopkins Dep.); Dkt. 52 ¶ 56.

On The Border also advertises its business via local radio and newspapers. *See* Ex. 4 at 18:13-15 (Brian Hopkins Dep.); Dkt. 52 ¶ 57. On The Border pays for this advertising. *See* Ex. 4 at 18:13 to 19:3 (Brian Hopkins Dep.); Dkt. 52 ¶ 58.

Defendants cannot establish that there is no genuine issue of material fact regarding the parties' relative investments in On The Border. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is flooded with genuine issues of material fact such that a reasonable jury could find Defendants' investments in On The Border far exceed Plaintiffs' investments. *See Gordon*, 674 F.3d at 772-73.

D.  NO SPECIAL SKILL IS REQUIRED TO PROVIDE ADULT ENTERTAINMENT DANCES

As discussed above, Defendants' only reference to this factor of the economic realities test is "as for the kind of occupation and nature of skill required, prior dancing experience is not required to work at On The Border. The girls are not taught how to dance once hired, rather they have control over their performances" Defendants' Brief, pg. 17. Defendants cannot sustain their initial burden on this factor of the economic realities test.

District courts in the Seventh Circuit, and throughout the nation, find in short order that exotic dancing does not require specialized skill. *Rubiano*, 560 F.Supp.3d at 1236 ("The parties

concede that exotic dancing doesn't require any specialized skills, supporting employment."); *Clincy v. Galardi S. Enterprises, Inc.*, 808 F.Supp.2d 1326 (N.D. Ga. 2011) ("[S]pecial skills are not required to perform as an entertainer at [strip club] Onyx); Shaw v. Set Enterprises, Inc., 241 F.Supp.3d 1318, 1326 (S.D. Fla. 2017) ("Defendants did not require the dancers to have the kind of special skill that would bring them outside the FLSA's definition of an employee.").

Defendants concede that On The Border has no requirement that Plaintiffs possess a certificate in dance, or other formal education or training. *See* Defendants' Brief, pgs. 16-17. Plaintiffs were qualified to work as dancers at On The Border because they were attractive and able to dance seductively, enticing customers to patronize On The Border. Indeed, Tammy Lueck admitted at her deposition that a manager "[s]ees an application, sees a photo ID, and then sees a picture, and then determines whether or not [a Dancer] will come in for an audition." *See* Ex. 8 at 16:7-10 (Tammy Lueck Dep.); Dkt. 52 ¶ 25. Notably absent from Defendants' hiring procedures is a request for Plaintiffs' resume. At bottom, Defendants boast Plaintiffs' attractiveness on their website, not their tango capabilities or classical training.

Defendants therefore cannot establish that there is no genuine issue of material fact regarding the degree of skill required to perform as a dancer at On The Border. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is saturated with genuine issues of material fact such that a reasonable jury could find Plaintiffs' employment with On The Border did not require special skill. *See Gordon*, 674 F.3d at 772-73.

### E. Defendants Hired Plaintiffs to Work at On The Border Indefinitely

Defendants contend that, because Plaintiffs could "come and go as they please, work at other gentlemen's clubs, [and] work as many or as few shifts as they desired after working just a couple mandatory requested shifts" this factor tilts in their favor. While Plaintiffs have addressed each of these arguments during this Opposition, Plaintiffs add the following points.

Some courts have found that relationships with a club that extend over one year can signify permanence. *See Clincy*, 808 F.Supp.2d at 1348. On the other hand, relationships that are established on a project-by-project basis, or have some other temporal limitation by their terms, are more suggestive of independent contractor status. *See Hobbs, Inc.*, 946 F.3d 824.

Plaintiffs worked at On The Border for years; in fact, Plaintiff Rice worked at On The Border for more than a decade. *See* Exs. 1-3, ¶ 3; Dkt. 52 ¶ 1. Furthermore, Defendants' Club Rules demonstrate that Plaintiffs could work at On The Border and enjoy a "long, lucrative" career, so long as Plaintiffs followed Defendants' rules. *See* Ex. 6; Dkt. 52 ¶ 51. As such, Plaintiffs' work relationship with Defendants was indefinite by its terms. This factor thus weighs in favor of finding an employer-employee relationship between Plaintiffs and On The Border.

Defendants therefore cannot establish that there is no genuine issue of material fact regarding the permanency of their employment with On The Border. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is brimming with genuine issues of material fact such that a reasonable jury could find Plaintiffs' employment with On The Border was permanent. *See Gordon*, 674 F.3d at 772-73.

F.    PLAINTIFFS PROVIDED AN INTEGRAL PART OF DEFENDANTS' BUSINESS

In their motion for summary judgment, Defendants do not brief the economic realities test's final factor: the extent to which the alleged employee's service is an "integral part" of the employer's business. *Lauritzen*, 835 F.2d at 1534. Defendants therefore cannot sustain their initial burden on this factor. Nevertheless, Plaintiffs brief this point in further opposition to Defendants' motion for summary judgment.

Dancers are the main attraction at On The Border, enticing customers with good looks, dances, and private dances. *See* Ex. 8 at 16:12-17 (Tammy Lueck Dep.); Dkt. 52 ¶ 22. Dancers are the primary form of entertainment at On The Border. *See* Ex. 1, ¶ 1; Dkt. 52 ¶ 21. Further, On The Border boasts on its website, https://otb.club, "Welcome to On The Border, Milwaukee's only Midwest Gentlemen's Club of the Year. We Pride ourselves on being highly selective when

it comes to choosing girls – we feature over 60 of Milwaukee's finest, plus monthly feature entertainers!"

Defendants therefore cannot establish that there is no genuine issue of material fact that Plaintiffs are not integral to On The Border's business. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is filled with genuine issues of material fact such that a reasonable jury could find Plaintiffs are integral to On The Border's business. *See Gordon*, 674 F.3d at 772-73.

## VI.   DEFENDANTS HAVE FAILED THEIR INITIAL BURDEN FOR EACH FACTOR OF THE ECONOMIC REALITIES TEST

Defendants cannot establish that there is no genuine issue of material fact as to any other the factors of the economic realities test. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden on some, or even all factors of the economic realities test, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is packed with genuine issues of material fact such that a reasonable jury could find for Plaintiffs on each factor of the economic realities test. *See Gordon*, 674 F.3d at 772-73.

Plaintiffs therefore request this Court deny Defendants' motion for summary judgment in its entirety as it relates to Defendants' misclassification of Plaintiffs as independent contractors under the FLSA.

## VII.   PLAINTIFFS ARE COVERED UNDER THE FLSA'S INDIVIDUAL AND ENTERPRISE COVERAGE PROVISIONS BECAUSE DEFENDANTS ADMIT THAT PLAINTIFFS SERVE OUT-OF-STATE CUSTOMERS AND DEFENDANTS ARE ENGAGED IN COMMERCE

Defendants contend that Plaintiffs are not individually covered under the FLSA. Defendants further argue, somehow, that On The Border is not covered under the FLSA's "enterprise" provision even though Defendants do not contest that they have a gross annual sales volume of at least $500,000. This Court should deny Defendants' motion for summary judgment on both grounds, and in short order.

A.  DEFENDANTS' BRIEF REVEALS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFFS ARE INDIVIDUALLY COVERED UNDER THE FLSA

An employee has individual coverage under the FLSA if his or her work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than an isolated, local activity." *Martinez v. Manolos Tamales, Inc.*, 2015 WL 5144024, at *1 (N.D. Ill. Aug. 31, 2015) (quoting *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1995)).

Defendants argue that the record is "devoid of any evidence that Fares, Rice, and Nygren were engaged in commerce itself." Defendants' Brief, pg. 19. The next sentence in Defendants' Brief reads "On the Border may be located close to the Wisconsin state line and advertise as [the] 'Midwest's Premier Gentlemen's Club'— which may very well draw customers from other states, but that is not the result of any act by the employee – Fares, Rice, or Nygren." *Id*. Defendants argument is wrong and beside the point.

Defendants do not dispute that Plaintiffs — Noer Fares, Janei Rice, and Layna Nygren — perform dances at On The Border for customers and receive tips directly from these customers as compensation for their dance performances. *See* Defendants' Brief, pgs. 3, 5, 6. By Defendants' own admission, Plaintiffs "may very well" perform dances at On The Border for out-of-state customers. In exchange for a dance, customers compensate Plaintiffs directly in the form of tips. And it bears repeating, by Defendants' own words, Plaintiffs "may very well" perform services at On The Border for out-of-state patrons, and receive compensation directly from those out-of-state patrons. Plaintiffs' work at On The Border is therefore "so directly and vitally related to the functioning of . . . a facility of interstate commerce as to be, in practical effect, a part of it." *Rubiano*, 560 F.Supp.3d at 1237. The summary judgment record is thus fraught with evidence that "a reasonable jury could find" plaintiffs are individually covered under the FLSA. *See Gordon*, 674 F.3d at 772-73.

Case 2:21-cv-00753-NJ     Filed 01/27/23     Page 27 of 34     Document 55

Defendants therefore cannot establish that there is no genuine issue of material fact that Plaintiffs are not individually covered under the FLSA. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is filled with genuine issues of material fact such that a reasonable jury could find Plaintiffs are individually covered under the FLSA. *See Gordon*, 674 F.3d at 772-73.

### B. PLAINTIFFS ARE COVERED UNDER THE FLSA PURSUANT TO ITS ENTERPRISE COVERAGE PROVISION

An employer has enterprise coverage under the FLSA if it "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce," and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Defendants claim Plaintiffs' written discovery responses to their request for facts supporting Plaintiffs' claim that Defendants were engaged in "commerce" were insufficient. This meritless claim aside, Defendants argument once again is wrong, beside the point, and ignored its burden to demonstrate a lack of genuine issue of material fact. *See Gordon*, 674 F.3d at 772-73.

Defendants do not contest that On The Border's annual gross sales volume is at least $500,000. Defendants' Brief, pg. 20. Rather, Defendants' fixate on "Plaintiffs' [failure] to offer factual support as to 'enterprise coverage' under the FLSA." Defendants' Brief, pg. 21. Plaintiffs noted in their discovery responses that On The Border has employed at least ten out-of-state dancers, that On The Border's VIP Host resides out-of-state, and the On The Border's location is located along the I-94 to attract customers travelling between Milwaukee and Chicago. These "handful of arbitrary 'facts,'" as Defendants call them, buttress Plaintiffs' claims that On The Border is engaged in interstate commerce.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION     PAGE 22 OF 27
FOR SUMMARY JUDGMENT
Case 2:21-cv-00753-NJ    Filed 01/27/23    Page 28 of 34    Document 55

Moreover, Plaintiffs reiterate that, by Defendants' own revelation, On The Border "may very well" perform dances at On The Border for out-of-state customers. In exchange for a dance, customers compensate Plaintiffs directly in the form of tips. Defendants' Brief, page nineteen, reads "On the Border may be located close to the Wisconsin state line and advertise as [the] 'Midwest's Premier Gentlemen's Club'— which may very well draw customers from other states, . . ." Plaintiffs have offered factual support for their contention that On The Border is an "enterprise" under the FLSA; but Defendants' admissions make clear that On The Border is engaged in interstate commerce.

Not only have Defendants failed to establish the absence of a genuine issue of material fact, *see Gordon*, 674 F.3d at 772-73, but they have placed it in bold, underline, and italics. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is overflowing with genuine issues of material fact such that a reasonable jury could find On The Border is an "enterprise" under the FLSA. *See Gordon*, 674 F.3d at 772-73.

**VIII. DEFENDANTS FAIL TO MEET THEIR INITIAL BURDEN ON PLAINTIFFS' ILLEGAL KICKBACK AND FORCED TIPPING CAUSES OF ACTION BEFORE PLAINTIFFS' MUST CREATE A GENUINE ISSUE OF MATERIAL FACT**

Defendants' argument that this Court should grant summary judgment on Plaintiffs' Third and Fifth causes of action is less than a paragon of clarity and precision. Defendants argue that this Court should dismiss Plaintiffs' causes of action for Illegal Kickbacks and Forced Tipping because Plaintiffs have not and cannot produce records documenting their exact damages. Defendants further argue this Court should grant summary judgment on Plaintiffs' Third and Fifth causes of action because Defendants did not require Plaintiffs to tip other On The Border employees. Defendants' argument, once again, is legally flawed and disingenuous.

Case 2:21-cv-00783-NJ    Filed 01/27/23    Page 29 of 34    Document 55

A. PLAINTIFFS ARE PERMITTED TO PROVE THEIR DAMAGES BY A JUST AND REASONABLE INFERENCE

Where an employer sued under the FLSA for unpaid minimum wages . . . has kept inadequate records, and the employee produces sufficient evidence to show the amount of work for which the employee was not properly compensated as a matter of a just and reasonable inference, the burden then shifts to the employer to come forward with negative evidence of the precise amount of work performed or with evidence to negative the reasonableness of such an inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688-89 (1946). If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* at 689.

Defendants' claim this Court should grant summary judgment as to Plaintiffs' Third and Fifth causes of action because "[i]n support of the damages being requested, no plaintiff can produce a record of shifts worked at On The Border, much less the amount of tips earned, house fees paid, tips paid to others at On The Border, or amounts of alleged fines paid." Defendants' Brief, pg. 23.

This is not the standard that Plaintiffs must meet to prevail on their Third and Fifth causes of action. Plaintiffs are entitled to present testimony at trial that approximates the amount of shifts worked at On The Border, the amount of tips earned, house fees paid, and other fine paid.

Defendants therefore cannot establish that there is no genuine issue of material fact that Plaintiffs are not entitled damages for their Third and Fifth causes of action. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record is filled with genuine issues of material fact such that a reasonable jury could find Plaintiffs can present sufficient testimony at trial that approximates their damages. *See Gordon*, 674 F.3d at 772-73.

B.  There Is, At Least, A Genuine Issue Of Material Fact Regarding Whether Defendants Forced Plaintiffs to Tip Other Employees

Defendants also argue that this Court should grant summary judgment because "[t]here is also evidence in the record that On The Border does not require dancers to "tip out." Defendants assert, incorrectly, that "Plaintiffs cannot point to anything specific requiring them to tip others." During Janei Rice's deposition, attached hereto as **Exhibit 16**, she and Defendants' counsel had the following exchange:

> **Question**: And during that time period, you've told me that when you were at On the Border, you did tip other co-employees. Is that an accurate statement?
>
> **Ms. Rice**: Correct.
>
> **Question**: And did you utilize those tips that received – to tip other people?
>
> **Ms. Rice**: I did.
>
> 　　. . .
>
> **Question**: Now, what was the reason that you tipped these people? What was the reason?
>
> **Ms. Rice**: Well, we were all told we were supposed to do it, take care – the people that take care of us.
>
> **Question**: Who told you to take care of the people that –
>
> **Ms. Rice**: The staff.
>
> **Question**: I'm sorry?
>
> **Ms. Rice**: The staff, house parents.
>
> 　　. . .
>
> **Question**: Did she [Tammy]ever indicate to you when you're supposed to pay them? At the end of your shift? At the end of the night?
>
> **Ms. Rice**: Yeah.

**Question**: And did she ever indicate – She didn't indicate the amount. Did she ever indicate to you whether there would be ramifications if they were not tipped?

**Ms. Rice**: I mean, she didn't directly out say that, but that was the perspective that we got, that it would affect out – you know, us making money.

**Question**: And how would it affect you ability to make money if you didn't tip?

**Ms. Rice**: Because the bouncer would intervene.

**Question**: And how would they intervene? What would they do?

**Ms. Rice**: They would, you know, basically sway customers away from us, the girls that didn't tip.

Ex. 16 at 38:21 to 41:8; Dkt. 52 ¶ 70-71.

Defendants do not acknowledge nor confront this testimony from Ms. Rice. Rather, Defendants offer the bald assertion that "Plaintiffs cannot point to anything specific requiring them to tip others." Defendants' Brief, pg. 24. Ms. Rice testified that if she did not tip, she would face ramifications from On The Border employees. *See* Ex. 16 at 38:21 to 41:8 (Depo. of Janei Rice); Dkt. 52 ¶ 70-71. That is to say, Ms. Rice testified that, as she understood, if she chose not to tip, On The Border employees would intentionally impede her opportunities to earn money as a dancer at On The Border. Ms. Rice's testimony thus epitomizes a forced tip.

Defendants therefore cannot establish that there is no genuine issue of material fact that Plaintiffs were not forced to tip non-dancer employees at On The Border. *Celotex Corp.*, 477 U.S. at 323. However, even if this Court finds that Defendants have sustained their initial burden, Plaintiffs have demonstrated that, viewing all evidence in the light most favorable to Plaintiffs, the record contains evidencing establishing genuine issues of material fact such that a reasonable jury could find Defendants forced Plaintiffs to tip non-dancer employees. *See Gordon*, 674 F.3d at 772-73.

///

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION**      **PAGE 26 OF 27**
**FOR SUMMARY JUDGMENT**
Case 2:21-cv-00753-NJ     Filed 01/27/23     Page 32 of 34     Document 55

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs request this Court deny Defendants' motion for summary judgment in its entirety.

 Dated: January 27, 2023

*/s/ John P. Kristensen*
John P. Kristensen
Alina S. Vulic
**CARPENTER & ZUCKERMAN**
8827 W Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 273-1230
*kristensen@cz.law*
*avulic@cz.law*

Jarrett L. Ellzey
Leigh S. Montgomery
**ELLZEY & ASSOCIATES PLLC**
1105 Milford Street
Houston, Texas 77006
Telephone: (713) 554-0092
*jarrett@ellzeylaw.com*
*leigh@ellzeylaw.com*

Jay A. Urban
**URBAN & TAYLOR SC**
4701 N Port Washington Road, Suite 400
Milwaukee, Wisconsin 53212
Telephone: (414) 906-5333
*jurban@wisconsininjury.com*

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on Friday, January 27, 2023 a true and correct copy of the attached **PLAINTIFFS' MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was served via CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Amber L. Herda
W. Timothy Steinle
**TERSCHAN STEINLE HODAN & GANZER LTD**
309 N. Water St. – Ste 215
Milwaukee, Wisconsin 53202
*amber@tshglaw.com*
*timothy.steinle@tshglaw.com*

***Counsel for Defendants***

*/s/ John. P. Kristensen*
John P. Kristensen