## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

NOER FARES, individually and on behalf of
all others similarly situated,

    **Plaintiff,**

    **v.**                             **Case No. 21-CV-753**

H, B, & H, LLC, d/b/a On the Border
Gentlemen's Club, GERALD HAY, and
DOES 1-10,

    **Defendants.**

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT

Noer Fares filed this collective action complaint against her former employer H, B,
& H, LLC d/b/a On the Border Gentlemen's Club ("OTB"), Gerald Hay, and Does 1-10
(collectively "the defendants") for alleged violations of the Fair Labor Standards Act
("FLSA"), 29 U.S.C. §§ 201, *et seq.*, specifically, failure to pay minimum wages, taking
illegal kickbacks, and forced tip sharing. (Docket # 1, Causes of Action One, Three, and
Five.) After granting Fares conditional class certification (Docket # 34), Janei Rice, Layna
Nygren, and Elizabeth Kornoelje consented to join the lawsuit.

Plaintiffs move for partial summary judgment on the issue of whether the defendants
misclassified the plaintiffs as independent contractors and on the defendants' good faith
defense under the FLSA. (Docket # 50.) The defendants move for summary judgment in
their favor as to all three of Plaintiffs' remaining FLSA claims. For the reasons stated below,

Plaintiffs' motion for partial summary judgment is granted in part and denied in part and the defendants' motion for summary judgment is granted.

## BACKGROUND FACTS

On the Border Gentlemen's Club is an adult-oriented entertainment facility, open seven days a week (Defendants' Proposed Findings of Fact ("DPFOF") ¶¶ 1–2, Docket # 48 and Pl.'s Resp. to DPFOF ¶¶ 1–2, Docket # 56), where the primary form of entertainment is topless dancers (Declaration of Noer Fares ("Fares Decl.") ¶ 2, Docket # 57). OTB has two stages, with two poles on each stage, which are all owned by the club. (DPFOF ¶ 5 and Pl.'s Resp. ¶ 5.) There is an entrance fee to enter OTB, and unless someone is overly intoxicated and should not be entering, generally everyone is welcome, but the employee working the door at the club can make that determination. (*Id.* ¶ 6.)

Plaintiffs Fares, Rice, and Nygren all worked at OTB as dancers. The defendants contend that dancers at OTB have the option to be engaged as an independent contractor or as a W-2 employee on payroll. (DPFOF ¶ 3 and Pl.'s Resp. ¶ 3.)

Fares worked for OTB as a dancer from approximately June 2018 until May 2021. (Fares Decl. ¶ 3.) While defendants assert that Fares was engaged as an independent contractor (DPFOF ¶ 7), Fares contends that she was not an independent contractor but an employee of OTB, stating that she was required to follow OTB's rules, policies and requirements or face termination; did not pay for any of the facilities, bills, utilities, dance poles, and advertising; had no authority to charge less than the set club prices for dances; and was paid directly by OTB customers for services provided (Fares Decl. ¶¶ 4–8). Fares does not recall receiving a W-2 from OTB and did not report to OTB how much money she generated by way of tips when she left. (DPFOF ¶¶ 11–12 and Pl.'s Resp. ¶¶ 11–12.) Fares

2

contends that she was required to tip other employees at OTB (except other dancers) and was fined or denied the ability to perform for failing to do so. (*Id.* ¶¶ 15–17.)

Rice worked for OTB as a dancer from approximately 2007 until 2019. (Declaration of Janei Rice ("Rice Decl.") ¶ 3, Docket # 57-1.) Rice avers that during her approximately twelve-year tenure as a dancer at OTB, at times, OTB properly classified her as an employee. (*Id.* ¶ 4.) At other times, however, Rice contends that OTB misclassified her as an independent contractor despite the fact that her performance did not change. (*Id.* ¶¶ 4–5.) Rice did not recall receiving a W-2 when she first started working at OTB, but she did receive a W-2 for several years, which coincided with her receiving a paycheck. (DPFOF ¶ 24 and Pl.'s Resp. ¶ 24.) Rice received tips from customers, whether or not she received a W-2. (*Id.* ¶ 26.) Rice contends that she tipped other co-employees at OTB using her own tips, such as the house parents, DJs, bouncers, and sometimes the managers. (*Id.* ¶ 28.)

Nygren worked at OTB as a dancer between 2017 and 2021. (DPFOF ¶ 38 and Pl.'s Resp. ¶ 38.) When Nygren started at OTB in 2017, she was classified as an independent contractor, at which time she understood that she would not be paid a salary or hourly wage, but that she would be compensated by tips she earned from entertaining customers. (*Id.* ¶ 39.) Nygren asserts that she requested to become an employee and be paid hourly wages around February 2021. (*Id.* ¶ 41.) After going onto payroll, Nygren got a paystub, but she usually owed OTB money for what she assumed was mostly the tips, but the hourly wages as well. (*Id.* ¶ 42.) Nygren contends that she tipped other employees such as bartenders, servers, and bouncers, and she faced repercussions if she failed to do so. (*Id.* ¶¶ 45–46.)

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

4

When both parties move for summary judgment in their favor on the same issue, "the court must consider the evidence through two different lenses." *Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 890 (S.D. Ind. 2009). Specifically, "[w]hen considering defendants' motion[ ], the court gives plaintiffs the benefit of conflicts in the evidence and favorable inferences. When considering plaintiffs' motion[ ], defendants receive those benefits." *Id.*

## ANALYSIS

As a preliminary matter, on December 6, 2022, Plaintiffs' counsel moved to withdraw their representation of Kornoelje, stating that Kornoelje refused to provide discovery responses or sit for a deposition. (Docket # 41.) Plaintiffs' counsel were unable to reach Kornoelje. (*Id.*) Counsel's motion to withdraw was granted (Docket # 45), leaving Kornoelje to proceed *pro se*. Defendants moved for summary judgment as to *pro se* plaintiff Kornoelje's claims, and indicated that Kornoelje was served by mail. (Docket # 47 at 26.) It does not appear, however, that defendants complied with Civil L.R. 56(a) by providing a statement consistent with Civil L.R. 56(a)(1)(A) and the text of several rules consistent with Civil L.R. 56(a)(1)(B). Kornoelje, however, has not opposed the defendants' motion for summary judgment as to her claims or otherwise taken any action to indicate that she continues to pursue these claims. Thus, I will grant the defendants' motion for summary judgment as to Kornoelje's claims.

Turning to the remaining plaintiffs, Fares, Rice, and Nygren bring three causes of action against the defendants pursuant to the FLSA. For the defendants to be liable under the FLSA, there must be an employer-employee relationship. *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1076 (N.D. Ill. 2014). Plaintiffs move for partial summary judgment in their

5

favor as to whether Defendants misclassified the plaintiffs as independent contractors rather than employees. (Docket # 50.) Defendants have also moved for summary judgment in their favor, arguing that the plaintiffs' FLSA claims fail because they were not employees but rather independent contractors. (Docket # 46.) Thus, whether Plaintiffs are employees or independent contractors is a threshold question that must be resolved.

If Plaintiffs are employees under the FLSA, Plaintiffs also move for summary judgment in their favor as to the defendants' good faith defense, and Defendants move for summary judgment in their favor as to the merits of Plaintiffs' FLSA claims. I will address each issue in turn.

1.  *Misclassification as Independent Contractors*

Plaintiffs argue that Defendants mischaracterized them as independent contractors rather than employees. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" includes "to suffer or permit to work." *Id.* § 203(g). As the Seventh Circuit has explained, "[i]t is well recognized that under the FLSA the statutory definitions regarding employment are broad and comprehensive in order to accomplish the remedial purposes of the Act." *Sec'y of Lab., U.S. Dep't of Lab. v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Because of this, courts "have not considered the common law concepts of 'employee' and 'independent contractor' to define the limits of the Act's coverage. We are seeking, instead, to determine 'economic reality.'" *Id.* For purposes of statutes like the FLSA, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* (internal quotation and citation omitted). In seeking to determine the economic reality of the nature of the working relationship, courts do not look to a particular isolated factor but to all the circumstances of

6

the work activity. *Id.* Certain criteria, however, have been developed to assist in determining the true nature of the relationship, "but no criterion is by itself, or by its absence, dispositive or controlling." *Id.* Among the criteria courts have considered are the following six:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanency and duration of the working relationship;
> 6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1534–35. The determination of a worker's status is a question of law. *Id.* at 1535. Defendants argue that the facts support that the plaintiffs were independent contractors. They argue that the dancers themselves decide whether they want to be paid as a W-2 employee or as an independent contractor; the dancers engage customers at the club for table and VIP dances when they choose; the dancers can solicit or refuse any customer; the dancers are able to work any additional shifts they choose in addition to the two to three required shifts per week; the dancers can work at other clubs; the dancers have artistic freedom over their dances and costumes; and the dancers are allowed to leave their shifts early. (Defs.' Br. at 16–17, Docket # 47.)

Even assuming these facts to be true, the economic realities in this case support an employer-employee relationship between Plaintiffs and Defendants. The first factor, the level of control, weighs heavily in favor of an employer-employee relationship. OTB does not dispute that it has a written set of thirty-five "Club Rules" that the plaintiffs were expected to follow (Plaintiff's Proposed Material Facts ("PPMF") ¶ 27, Docket # 52 and

7

Defs.' Resp to PPMF ("Defs.' Resp.) ¶ 27, Docket # 54), despite asserting that "many are not enforced" (Defs.' Br. at 16). These rules are as follows:

> (1) waiting until the next girl comes to stage before leaving the stage; (2) paying a fine if a dancer skips or is late to a stage set; (3) no see-through outfits; no eating on the floor; (4) "we are not here to babysit;" (5) no excessive drinking; (6) no bringing in alcohol or else a fine will result; (7) no soliciting or leaving with customers; (8) no "sleazy" or "lewd" dancing no legs over the shoulders, crotches in face, etcetera; (9) no cell phones on the floor, no "whining" or "complaining;" be on time; (10) know your mandatory shifts; (11) turn in pimps and drug-dealers to management; (12) no "raggy" costumes; (13) ensure hair and make-up is done; (14) watch your weight and shape; (15) no arguing with other dancers; (16) treat non-tippers with respect; (17) maintain a smile; (18) club is topless only; (19) no kissing customers on the lips; (20) no sitting on customer's laps on the floor; (21) no belligerent, loud, obnoxious, or unprofessional behavior; (22) no stage props; no "rides for five;" (23) dancers must finish tip walks quickly; (24) rides must wait outside; (25) no boyfriends, girlfriends, or husbands allowed in the club during work; (26) dance only in designated areas; (27) if working a day shift, must leave at 7 p.m.; (28) no hanging out in dressing room; (29) must wait for security to clear you to leave; no overcharging customers; (30) must wear shoes at all times; only a customer, VIP host, or waitress can invite you to a VIP room; (31) top must be on during tip walk; (32) no drugs; (33) shift hours from 11:30 a.m. to 7:00 p.m. for day shift and 6 p.m. to 2 a.m. for night shifts; (34) must work entire shift unless you receive prior approval; (35) if there are any issues with these rules, dancer may only raise them with house supervisors, not management or owners.

(PPMF ¶ 30.) These rules touch on nearly every aspect of how the plaintiffs' work is performed. OTB's rules control the dancers' appearance (e.g., "watch your weight and shape"); how the dancers are to perform their dances (e.g., no lewd dancing); how the dancers interact with customers (e.g., no kissing customers on the lips or sitting on customer's laps on the floor); and the hours of their shifts. (*Id.*) The rules instruct when the dancers can leave (e.g., after getting security clearance); who the dancers can associate with at work (e.g., no boyfriends, girlfriends, or husbands allowed in the club); and prohibit the dancers from hanging out in the dressing room. In *Mays v. Rubiano, Inc.*, 560 F. Supp. 3d

1230 (N.D. Ind. 2021), the court was similarly tasked with determining whether exotic dancers were employees or independent contractors of the club. In finding that the dancers were employees, when considering the first factor, the court noted that the dancers were "expected to comply with an extensive list of rules while working" that went "beyond what is normally asked of an independent contractor." *Id.* at 1236. The same is true in this case, indicating an employment relationship.

The other applicable factors further support an employer-employee relationship. As to the third factor, the alleged employee's investment in equipment or materials required for the job, Defendants do not dispute that OTB owns the stage, poles, and sound system utilized by the dancers while performing. Defendants argue, however, that there is a "shared responsibility" between the dancers and the club when it comes to the employee's investment in equipment or materials because the dancers pay for their own costumes, personal beauty products, and time invested in learning how to dance. (Defs.' Br. at 17.) But the investment in such items as personal beauty products and costumes pales in comparison to the type of investment OTB puts into equipment and materials such as the poles, stage, and sound system necessary for the dancers to perform their work. *See Mays*, 560 F. Supp. 3d at 1236 (stating that any costs incurred by the dancers, such as the cost for costumes, was "incidental"). This factor supports a finding of an employer-employee relationship.

As to the fourth factor, whether the service requires a special skill, this also weighs in favor of an employer-employee relationship. Tammy Lueck, the "House Mom" at OTB, is responsible for hiring OTB's dancers. (PPMF ¶ 20 and Defs.' Resp. ¶ 20.) Lueck testified that prior dance experience is unnecessary to work as a dancer at OTB, nor are the dancers required to have any formal dance training. (Deposition of Tammy Lueck ("Lueck Dep.")

9

at 15–16, Docket # 57-7.) She testified that the hiring process involves filling out an application, showing a photo identification, and sometimes having an audition. (*Id.* at 16.) When asked whether it was "fair to say that the manager's making [the hiring decision] based on the dancer's perceived attractiveness," Lueck answered "I would say basically, yeah. That's basically what we do." (*Id.*) As the court found in *Mays*, "exotic dancing doesn't require any special skills, supporting employment." *See Mays*, 560 F. Supp. 3d at 1236.

Finally, the fifth and sixth factors both weigh in favor of an employer-employee relationship as well. The plaintiffs all worked for OTB for several years, showing a degree of permanency and duration of a working relationship unlike that of an independent contractor. *See id.* (noting that the short duration of the working relationship supports a finding of independent contractor status). And Defendants do not dispute that the "primary form of entertainment" at OTB is the topless dancers. (PPMF ¶ 21 and Defs.' Resp. ¶ 21.) Thus, the services the dancers render are integral to OTB's business, supporting an employer-employee relationship.

For all of these reasons, I find the economic reality of the relationship in this case is one of employer and employee. Plaintiffs' motion for partial summary judgment on the issue of misclassification as independent contractors is granted.

###### 2.   *Wage Claims*

Finding an employer-employee relationship does exist between the parties, I now move to the merits of Plaintiffs' FLSA claims. In Count One, Plaintiffs allege that Defendants failed to pay minimum wages pursuant to 29 U.S.C. § 206. (Compl. ¶¶ 99–105.) In Counts Three and Five, Plaintiffs allege that Defendants violated the "free and clear"

10

requirement of 29 C.F.R. § 531.35—section 206's corresponding federal regulation—by requiring Plaintiffs to pay monetary fees to the defendants and to other OTB employees who did not work in positions that are customarily and regularly tipped. (*Id.* ¶¶ 114–19, 135–39.)

The FLSA imposes minimum hourly wages for employees who are "engaged in commerce or in the production of goods for commerce" or who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA's definition of "wages" recognizes that if certain conditions are met, employers of "tipped employees" may include part of the employee's tips as wage payments. 29 U.S.C. § 203(m). The corresponding federal regulations state that the "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. The regulation provides that the "wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." *Id.*

However, in order for the FLSA protections to apply, an employee must either be engaged in commerce (i.e., individual-based coverage) or be employed by an enterprise engaged in commerce (i.e., enterprise-based coverage). *Torres v. Pallets 4 Less, Inc.*, No. 14 CV 4219, 2015 WL 920782, at *2 (N.D. Ill. Mar. 2, 2015). Plaintiffs assert questions of fact exist as to whether either or both individual and enterprise coverage exists. Defendants argue that Plaintiffs fail to put forth any evidence showing either exists.

### 2.1   Individual Coverage for the Plaintiffs

Plaintiffs assert they are individually covered under the FLSA. For individual-based coverage, the FLSA provides two ways individual coverage can attach: (1) the employee is

"engaged in commerce" itself or (2) the employee is engaged "in the production of goods for commerce." 29 U.S.C. § 206(a). Plaintiffs do not argue that they are engaged "in the production of goods for commerce." (Pls.' Br. in Opp. at 21–22, Docket # 55.) Rather, they argue they are "engaged in commerce" itself. (*Id.*) Specifically, Plaintiffs argue that OTB is located close to the Wisconsin state line and advertises itself as the "Midwest's Premier Gentlemen's Club." (*Id.*) Plaintiffs argue that OTB does not dispute that Plaintiffs "may very well" perform services at OTB for out-of-state patrons. (*Id.*)

The FLSA applies to those who are engaged in commerce; it is not enough to show that the employee's activities affected commerce. *Shoemaker v. Lake Arbutus Pavilion, LLC*, 115 F. Supp. 3d 974, 979 (W.D. Wis. 2015); *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). The Court must focus on the activities of the employees and not on the business of the employer. *Mitchell*, 358 U.S. at 211. For an employee to "engage in commerce" herself, her work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). This is a practical inquiry that focuses on the specific activities of the employee and what kind of effect those activities might have on interstate commerce. *Shoemaker*, 115 F. Supp. 3d at 979. The employee carries the burden of showing that her work was engaged in commerce. *Mays,* 560 F. Supp. 3d at 1237; *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 120 (1946). The applicable regulations provide that:

> One practical question to be asked is whether, without the particular service, interstate or foreign commerce would be impeded, impaired, or abated; others are whether the service contributes materially to the consummation of transactions in interstate or foreign commerce or makes it possible for existing

12

instrumentalities of commerce to accomplish the movement of such commerce effectively and to free it from burdens or obstructions.

29 C.F.R. § 776.9. If the employee's activities fall below this level of engagement with interstate commerce, then the activities are considered to be more local in nature and the employee falls outside of FLSA coverage. *Shoemaker*, 115 F. Supp. 3d at 979.

While Plaintiffs argue that OTB is located close to the Wisconsin state line and that OTB advertises itself as the "Midwest's Premier Gentlemen's Club," the focus of an individual coverage analysis is on the *employee's* activities, not the employer's business. *See Mitchell*, 358 U.S. at 211. And the sum total of Plaintiffs' argument in support of their engagement in commerce is that Plaintiffs might, at times, perform services for out-of-state patrons alongside local patrons. (Pls.' Br. in Opp. at 21–22.) But this is insufficient to show Plaintiffs are individually covered under the FLSA. *See Shoemaker*, 115 F. Supp. 3d at 979 ("Serving some out-of-state patrons who visit the rink alongside the local patrons does not make the service 'so directly and vitally related to the functioning' of LAP as a facility of interstate commerce as to *constitute* interstate commerce."). At best, Plaintiffs' service of customers at OTB was a local activity that may have affected interstate commerce, *see id.*, and this is not enough for individual coverage under the FLSA, *Mitchell*, 358 U.S. at 211. Thus, the record does not support that Plaintiffs are entitled to individual coverage under the FLSA.

### 2.2    Enterprise Coverage for OTB

Plaintiffs also assert that OTB has enterprise coverage under the FLSA. To be considered an "enterprise engaged in commerce or in the production of goods for commerce," the enterprise must: (1) have employees engaged in commerce or in the

13

production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) have "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A). For purposes of summary judgment, Defendants do not contest that OTB has a gross annual volume of sales of at least $500,000. (Defs.' Br. at 20.) Thus, the question before me is whether the enterprise has engaged in commerce under the first element.

Plaintiffs argue that "the record is overflowing with genuine issues of material fact such that a reasonable jury could find On The Border is an 'enterprise' under the FLSA." (Pls. Br. in Opp. at 29.) Plaintiffs argue that OTB has employed at least ten out-of-state dancers, OTB's VIP Host resides out-of-state, and OTB is located along an interstate in order to attract customers traveling between Milwaukee and Chicago, buttressing their claims that OTB is engaged in interstate commerce. (*Id.* at 28.) Plaintiffs further argue that the dancers "may very well" perform for out-of-state customers and are paid directly from the customers' tips and that OTB advertises itself as "the Midwest's Premier Gentlemen's Club" to draw out-of-state customers. (*Id.* at 29.)

Although Plaintiffs assert that the record is "overflowing" with disputed facts in support of their position, Plaintiffs do little analysis as to how the facts, whether disputed or not, support their legal position. Once again, for an enterprise to be "engaged in commerce or in the production of goods for commerce," the enterprise must: (1) have employees engaged in commerce; (2) have employees engaged in the production of goods for commerce; or (3) have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

14

Plaintiffs do not appear to contend that OTB has employees engaged in the production of goods for commerce. "Goods" under the FLSA are defined as: "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). Thus, given the nature of OTB's business, it seems unlikely OTB's employees are engaged in the production of goods for commerce.

As to whether OTB has employees engaged in commerce, Plaintiffs rely on essentially the same evidence as their individual coverage argument, except with the addition of the assertion that OTB employs out-of-state employees. But Plaintiffs have the wrong focus. The issue is not whether the enterprise employs people who may reside out-of-state; the issue is whether the employees are engaged in commerce. And for the same reasons explained above as to Plaintiffs' individual coverage argument, they have failed to show OTB has employees "engaged in commerce."

Thus, Plaintiffs' remaining avenue for enterprise coverage is if OTB has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. "Materials" under the FLSA means "tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees 'handling, selling, or otherwise working on' the item for the employer's commercial (not just any) purposes." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1227 (11th Cir. 2010). Although the Eleventh Circuit counseled that the meaning of "materials" is "not so expansive as to be limitless; not every employer that meets the

15

$500,000 sales threshold must be subject to the FLSA," *id.*; other courts have noted that the broad definition of "materials" means that "'virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA,'" *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quoting *Dunlop v. Industrial America Corp.*, 516 F.2d 498, 501–02 (5th Cir. 1975)).

But even with this expansive definition, Plaintiffs provide no evidence to support that OTB has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. The only piece of evidence that comes even close to supporting enterprise coverage is Plaintiffs' assertion that OTB advertises through its website. (Pl.'s Add. Facts ¶¶ 20, 23, Docket # 56.) Enterprises that employ people who, as a regular and recurrent part of their duties, use the mail, telephone, internet, or similar instrumentalities to communicate information across state lines are covered under the FLSA. 29 C.F.R. § 776.10. But Plaintiffs provide no other evidence that the use of the internet for advertising is a recurrent and regular part of any of OTB's employees' duties. Nor do Plaintiffs argue or present any evidence that OTB orders any materials for its business, such as food or alcohol, from other states. Since "1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530 (collecting cases). In other words, given how modern businesses operate, the bar for establishing that a local business falls within the reach of the FLSA is not very high. The problem in this case, however, is that Plaintiffs have not presented any

evidence to satisfy this relatively low bar. The court's assumptions and speculations about how OTB is operated cannot substitute for evidence.

As the Seventh Circuit has stated, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations and citation omitted). If Plaintiffs had evidence that, for example, the dancers performed to music streamed from the internet, *see, e.g., Foster v. Gold & Silver Priv. Club, Inc.*, No. 7:14CV00698, 2015 WL 8489998, at *6 (W.D. Va. Dec. 9, 2015) (finding FLSA coverage because club's dancers were required to regularly use the internet to perform dances), or OTB purchased food or beverages from out-of-state, *see, e.g.*, *Reich v. Priba Corp.*, 890 F. Supp. 586, 590 (N.D. Tex. 1995) (finding enterprise coverage when employees were handling, selling, or otherwise working on alcoholic beverages that have moved in interstate commerce), then Plaintiffs should have presented the evidence in its briefing and developed a legal argument around the facts. But Plaintiffs failed to do so. Perhaps this evidence exists somewhere in the record, but, as the Seventh Circuit has stated, "Judges are not like pigs, hunting for truffles buried in [the record]." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Thus, Plaintiffs have not presented evidence to support a finding that OTB is covered under enterprise coverage. For this reason, Plaintiffs' FLSA claims fail as a matter of law.

Because the plaintiffs are not individually covered under the FLSA, and because OTB is not covered under enterprise coverage, Plaintiffs' FLSA wage claims fail. Summary judgment is entered in favor of the defendants and this case is dismissed.

17

## CONCLUSION

Plaintiffs, former dancers at OTB, argue that Defendants violated the FLSA's wage requirements by failing to pay them a minimum wage, taking illegal kickbacks, and forcing them to tip-share. Both parties moved for summary judgment in their favor as to whether Defendants misclassified Plaintiffs as independent contractors when they were in fact employees under the FLSA. For the reasons explained above, I find that Plaintiffs are indeed employees of Defendants, not independent contractors. As such, Plaintiffs' motion for partial summary judgment as to this issue is granted.

Defendants, however, also moved for summary judgment in their favor on the merits of Plaintiffs' wage claims, arguing that Plaintiffs cannot establish that Defendants are covered under either individual or enterprise coverage under the FLSA. I find that the undisputed facts show that, as a matter of law, Plaintiffs are not individually covered under the FLSA and OTB is not covered under enterprise coverage. For these reasons, Plaintiffs' wage claims fail and summary judgment is granted in favor of Defendants as to these three causes of action. While Plaintiffs also moved for summary judgment declaring that Defendants' good faith defense under the FLSA fails as a matter of law, because their FLSA claims fail, Plaintiffs' motion for summary judgment as to the good faith defense is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendants' motion for summary judgment (Docket # 46) is **GRANTED** and Plaintiffs' motion for partial summary judgment (Docket # 50) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that this case is dismissed. The clerk of court will enter judgment accordingly.

18

Dated at Milwaukee, Wisconsin this 14th day of June, 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge